IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ADONIS L. THOMPSON,

        Petitioner,

v.

MARK NOOTH,

        Respondent.

Case No. 3:09-cv-00823-AC

FINDINGS AND RECOMMENDATION

CORRINE J. LAI
520 SW 6th Avenue
Suite 825
Portland, OR 97204

    Attorney for Petitioner

JOHN R. KROGER
Attorney General
JACQUELINE KAMINS
Assistant Attorney General
1162 Court Street NE
Salem, OR 97301

    Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at the Snake River Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition for Writ of Habeas Corpus should be DENIED.

## BACKGROUND

On August 28, 2001, a Multnomah County grand jury indicted Petitioner on two counts of Robbery in the First Degree with a Firearm and four counts of Robbery in the Second Degree. The charges arose from a June 13, 2001, bank robbery.

On that morning, Petitioner met with three co-defendants at Petitioner's girlfriend's apartment. The four sat around a table reviewing and discussing a diagram of the IBEW Credit Union in Portland, Oregon. When they left the apartment, two co-defendants drove away in a tan Chevy Celebrity, and Petitioner took the other co-defendant in Petitioner's blue Ford Taurus. Both cars drove to the Credit Union. Petitioner had a walkie-talkie in his car and one of the co-defendants in the other car had another walkie-talkie, which he took into the Credit Union. The walkie-talkie in Petitioner's car was to be used to alert the co-defendants in the Credit Union to the presence of any police.

Upon their arrival at the Credit Union, the two co-defendants from the other car walked inside. One of them pointed a gun at the two tellers on duty. The other co-defendant removed money from the tellers' drawers, and then both co-defendants left the Credit Union together. Petitioner was waiting outside, across the street in front of a club. When the two co-defendants ran from the Credit Union, they contacted Petitioner on the walkie-talkie. They all agreed to meet back

up at Petitioner's girlfriend's apartment. Petitioner and the third co-defendant left the scene in Petitioner's car. Once they all arrived back at Petitioner's girlfriend's apartment, Petitioner opened the door for them with a key.

When the four arrived back at the apartment, they all started counting the money. An electronic tracking device a teller had secreted in with the money led police to the apartment. When Petitioner looked out a window, he saw the police sitting outside. Petitioner and one of the co-defendants ran from the apartment, while another attempted to flush the money down the toilet. The two co-defendants in the apartment were immediately apprehended, as was the co-defendant who ran from the apartment with Petitioner. Petitioner escaped, but was subsequently arrested on July 5, 2001.

Petitioner's case was tried to a jury. All three of Petitioner's co-defendants accepted plea agreements and testified at Petitioner's trial. One co-defendant protected Petitioner and testified he was not a look-out and had nothing to do with the robbery, despite statements he previously gave to the FBI in which he implicated Petitioner. Another co-defendant also testified that Petitioner had nothing to do with the robbery.

The final co-defendant, a 16-year old girl, testified that Petitioner and the other two co-defendants were all looking at the bank diagram before the robbery. She also testified that Petitioner drove the Taurus, parked across the street from the bank, and kept a walkie-talkie with him so he could alert them if any police were coming. Finally, she testified that Petitioner let them all in to his girlfriend's apartment after the robbery, and that he helped count the money.

Special Agent Mueller, who interviewed the co-defendant who brandished the gun, testified that the co-defendant told him Petitioner hid the gun behind the refrigerator in the apartment after the robbery. Detective Mueller testified that he located the gun behind the refrigerator.

Special Agent Frazier testified that he found a walkie-talkie inside Petitioner's blue Ford Taurus. Special Agent Ruffner testified that he found the money from the Credit Union inside the apartment. Special Agent Frazier also testified that he interviewed Petitioner the day after his arrest. At that time, Petitioner denied that he was with any of the three co-defendants the day of the robbery and denied being at the club across the street from the Credit Union the day of the robbery.

Detective Harrison showed the jury pictures of Petitioner's blue Ford Taurus taken by a security camera in the club parking lot across from the Credit Union on the day of the robbery. Agent Mueller showed the jury a picture of Petitioner standing outside the club for 15 seconds immediately before the robbery.

Petitioner did not testify at trial. Immediately prior to closing arguments, the deputy district attorney offered Petitioner the opportunity to plead guilty to some reduced charges with a sentence of 50 months. Petitioner's trial attorney advised Petitioner to accept the offer, but Petitioner refused. The jury found Petitioner guilty on all charges. The trial judge sentenced Petitioner to a total of 110 months of imprisonment.

Petitioner filed a direct appeal. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *State v. Thompson*, 193 Or. App. 164, 90 P.3d 636, *rev. denied*, 337 Or. 182, 94 P.3d 878 (2004).

Petitioner then sought state post-conviction relief ("PCR"). Following an evidentiary hearing, the PCR trial judge denied relief. Petitioner appealed, but the Oregon Court of Appeals again affirmed without opinion and the Oregon Supreme Court denied relief. *Thompson v. Hall*, 225 Or. App. 219, 200 P.3d 641 (2008), *rev. denied*, 346 Or. 116, 205 P.3d 888 (2009).

On July 16, 2009, Petitioner filed his habeas corpus Petition in this Court. The *pro se* Petition for Writ of Habeas Corpus alleges Petitioner is entitled to relief on the following bases:

> **GROUND ONE:** Petitioner was denied due process and a fair trial and sentencing under Article 1, Sections 11 and 33 of the Oregon State Constitution and the Fifth and Fourteenth Amendments to the Constitution of the United States and the Due Process Clause of the Fourteenth Amendments to the United States Constitution; Petitioner was denied effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, section 12 and 33 of the Oregon Constitution when his trial counsel ... failed to properly represent him.
> **SUPPORTING FACTS:**
> (1) Failed to object to impairment of trial by jury
>  (a) The jury that convicted Petitioner was selected in a manner that violated the right to a jury representing a fair cross-section of the community and violated the equal protection clause of the 14th amendment because of the systematic exclusion of racial, religious, economic, age-based gender-based or other distinct group of persons to wit: no male jurors of the petitioner's race were on the jury.
>  (b) In selecting the jury, the prosecutor intentionally exercised his peremptory challenges in a manner designed to remove minorities in violation of the 6th and 14th amendments.
> (2) Failed to object to the mandatory minimum sentence required by Measure 11 as a violation of the United States Constitution. Trial counsel's failure to raise the issue constituted a procedural default amounting to a failure to exhaust available state remedies, which precluded Petitioner from exercising his right to raise as-yet undecided issues in federal court. That constitutes inadequate and ineffective assistance of counsel with actual prejudice.
> (3) Failure to object to the court imposing a consecutive sentence based on ORS 137.123. Oregon law presumes the court will impose concurrent sentences for multiple convictions *State v. Nail*, 304 OR 359, 366 (1987), The court may impose a consecutive sentence when "aggravating factors" are present beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 US 466, 490,

5 - FINDINGS AND RECOMMENDATION -

     120 S. Ct. 2348, 147 L. Ed. 235 (2000), which had been decided one year prior to the sentencing of the defendant.

(4) To agree to [a] stipulation regarding the Petitioner being on parole at the time of the crime. Petitioner did not testify or bring his character into issue. His trial attorney should have moved for a mistrial.

(5) All the allegations presented by the defendant in his petition for Post-Conviction Relief filed on March 25, 2005.

(6) Failed to object to the shackling of the co-defendants in the presence of the jury.

(7) Failure to call witness that would have exonerated Petitioner and/or advance his defense to the charged offenses; specifically there were eye-witnesses that were present during the so-called planning stages, whereas the co-defendants made testimony in open court that Petitioner was not part of the robbery or a participant in the planning of the robbery, and these witnesses would have testified that he did not participate in such.

(8) Failed to object to the erroneous jury instruction when the trial court was allowed to instruct the jury that the state was not required to show that defendant actually knew that a weapon would be used, by the co-defendant, as aider and abettor.

This Court appointed counsel to represent Petitioner. In the Memorandum in Support of Petition for Writ of Habeas Corpus filed by counsel on Petitioner's behalf, two claims for relief are addressed:

> **Ground One:** Ineffective assistance of counsel when trial counsel failed to object to the introduction of evidence by the state claiming Petitioner was on parole, when he had not testified.
>
> **Ground Two:** Ineffective assistance of counsel when trial counsel failed to object to the court instructing the jury that the state was not required to show that Petitioner actually knew a weapon would be used by co-defendant to be convicted of aiding and abetting the co-defendant.

Respondent argues the claim addressed in Ground One is not properly before this Court because it was not alleged in the *pro se* Petition for Writ of Habeas Corpus. In the alternative, Respondent argues Petitioner procedurally defaulted this claim because it was not alleged in his state PCR petition.

6 - FINDINGS AND RECOMMENDATION -

With respect to the claim addressed in Ground Two of Petitioner's Memorandum of Law, Respondent agrees the claim was properly presented to the PCR trial court, and also agrees that the PCR trial judge erroneously refused to consider the merits of the claim because he improperly construed the claim as alleging trial error instead of ineffective assistance of trial counsel. Respondent argues, nonetheless, that Petitioner is not entitled to relief on the merits of this claim.

Finally, with regard to the claims alleged in the *pro se* Petition for Writ of Habeas Corpus but not addressed in the Memorandum in Support, Respondent argues these claims are waived.

## DISCUSSION

### I. Unaddressed Claims

In the Response to Petition for Writ of Habeas Corpus, Respondent argues all but one of the sub-claims alleged in the *pro se* Petition were procedurally defaulted. As noted, however, Petitioner addresses only two claims in Petitioner's Memorandum in Support of Petition for Writ of Habeas Corpus. Petitioner does not address the remaining claims. Because Respondent's allegations of procedural default are correct with respect to the claims not addressed by Petitioner, and because Petitioner makes no showing of cause and prejudice or fundamental miscarriage of justice to excuse the procedural default, Petitioner is not entitled to relief on the grounds alleged in the Petition but not addressed in the Memorandum in Support. See 28 U.S.C. § 2248 ("[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.")

7 - FINDINGS AND RECOMMENDATION -

## II.  Ground One Claim - Ineffective Assistance for Failure to Object to Testimony

In his Memorandum in Support, Petitioner argues trial counsel was ineffective in failing to object to admission of testimony that Petitioner was on parole at the time of his crime. Respondent argues this claim was not alleged in the Petition before this Court and that, in any event, the claim was procedurally defaulted because it was not included in Petitioner's formal PCR petition.

The Petition for Writ of Habeas Corpus filed in this Court and the Second Amended Petition for Post-Conviction Relief filed in the state PCR proceeding both contained identical language, that trial counsel provided constitutionally ineffective assistance as follows:

> To agree to [a] stipulation regarding the Petitioner being on parole at the time of the crime. Petitioner did not testify or bring his character into issue. His trial attorney should have moved for a mistrial.

Although not the most artful pleading, this allegation sufficiently raises the claim argued as Ground One in Petitioner's Memorandum in Support of Petition for Writ of Habeas Corpus. Though the allegation erroneously states counsel agreed to a stipulation, *it goes on to allege* counsel failed to move for a mistrial because Petitioner did not testify or bring his character into issue. This Court is satisfied the allegation sufficiently raises the claim argued in Petitioner's Memorandum in Support.

Likewise, the claim is not procedurally defaulted. The PCR trial judge focused his decision solely on the allegation regarding the erroneous stipulation. Despite both parties' briefing on the issue of failure to object or move for a mistrial, the PCR judge did not address that claim. Nonetheless, the claim was fairly presented in the PCR Petition and was preserved on appeal and

8 - FINDINGS AND RECOMMENDATION -

in the Petition for Review. The fact that the judge did not address the claim does not, in itself, render the claim defaulted. As such, Petitioner's claim must be addressed on the merits.

### A.    Legal Standards

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove a deficient performance of counsel, a petitioner must demonstrate that trial counsel "made errors that a reasonably competent attorney as a diligent and conscientious advocate would not have made." Butcher v. Marquez, 758 F.2d 373, 376 (9th Cir. 1985). The test is whether the assistance was reasonably effective under the circumstances, and judicial scrutiny must be highly deferential, with the court indulging a presumption that the attorney's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689.

To establish the second prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In determining whether a defendant was prejudiced by ineffective assistance of counsel, the court should examine whether the "'result of the proceeding was fundamentally unfair or unreliable.'" United States v. Palomba, 31 F.3d 1456, 1460–61 (9th Cir. 1994) (quoting Lockhart v. Fretwell, 506 U.S. 364, 368 (1993)).

### B.    Analysis

Petitioner challenges his trial attorney's failure to object to a single instance of testimony by Petitioner's arresting officer that he recognized Petitioner on the day he arrested him and he

9 - FINDINGS AND RECOMMENDATION -

knew Petitioner "had a parole violation warrant." Resp. Exh. 116, p. 11. The evidence was offered only to explain the circumstances leading to Petitioner's arrest several weeks after the robbery. Even if Petitioner's trial attorney was ineffective for failing to object to this isolated statement, this failure did not prejudice the outcome of Petitioner's trial, given the totality of the other evidence presented.

The evidence established that the three co-defendants were at Petitioner's house on the morning of the robbery. The four of them sat around a table, looking at and discussing a diagram of the Credit Union. The four split up in separate cars, and Petitioner drove his car with one of the co-defendants as a passenger. Petitioner parked in a front of a club across the street from the Credit Union.

Following the robbery, all four returned to Petitioner's girlfriend's house, where he let everyone in with a key to the front door. While the four robbers were counting the money, the police arrived. Petitioner and one of the co-defendants ran out the door. The co-defendant was apprehended, but Petitioner got away.

In light of all of this evidence against Petitioner, the fact that his trial counsel did not object to the arresting officer's reference to Petitioner's outstanding parole violation warrant does not establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Accordingly, Petitioner is not entitled to habeas corpus relief on this claim.

### III. Ground Two Claim - Ineffective Assistance for Failure to Object to Jury Instruction

In his PCR Petition, Petitioner alleged trial counsel was ineffective in failing to object to a jury instruction that the state did not need to prove Petitioner had knowledge of his co-defendant's weapon in order to convict Petitioner of Robbery in the First Degree on an aiding and abetting theory. The state addressed the claim as such in the PCR Trial Memorandum. At the PCR trial, however, the PCR trial judge misconstrued the claim as alleging a trial error, not an ineffective assistance of counsel error:

> [T]he final complaint is regarding an erroneous jury instruction, which isn't a basis or can't be the basis of PCR post-conviction. That's a direct appeal issue that could have been raised. Whether it was or not, I don't know, but it could have been raised, should have been raised and wasn't. It's not a basis of post-conviction.

Resp. Exh. 126, p. 14.

On appeal from the PCR trial court's denial of relief, Petitioner argued the PCR trial judge erred. Respondent conceded the error, but argued Petitioner was not entitled to relief on the merits because the jury instruction in question was unambiguous and a correct statement of law, and Petitioner could not, therefore, establish ineffective assistance of counsel. As noted above, the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review, so the legal underpinnings of their decisions are unknown. This Court finds that, in any event, Petitioner cannot prevail upon his ineffective assistance of counsel claim based upon the alleged failure to object to the jury instruction in question.

11 - FINDINGS AND RECOMMENDATION -

In Oregon, a person commits Robbery in the First Degree by committing Robbery in the Third Degree with an additional aggravating factor. Third-degree robbery is defined in Or. Rev. Stat. § 164.395, which provides in pertinent part:

> (1) A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft . . . the person uses or threatens the immediate use of physical force upon another person with the intent of:
>
> (a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or
>
> (b) Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft . . . .

The crime of Robbery in the Third Degree is elevated to Robbery in the First Degree if the person: "(a) Is armed with a deadly weapon; or (b) Uses or attempts to use a dangerous weapon; or (c) Causes or attempts to cause serious physical injury to any person." Or. Rev. Stat. § 164.415(1). A person can be guilty under an accomplice theory of liability if the person "[a]ids or abets or agrees or attempts to aid or abet [another] person in planning or committing a crime." Or. Rev. Stat. § 161.155(2)(b).

At trial, Petitioner did not dispute the fact that his co-defendants committed a robbery while armed with a deadly weapon. Instead, he argued first that he did not "intend" to aid and abet the commission of the robbery, but was tricked into giving the third co-defendant a ride to the Credit Union. Second, he argued that even if the jury concluded he was involved in the robbery, it was not intended to be a robbery with a gun.

During a break in the trial, the trial judge and counsel discussed the proposed jury instructions. Petitioner's attorney did not object to the form of the state's proposed instruction on

12 - FINDINGS AND RECOMMENDATION -

Robbery in the First Degree, which reflected Petitioner's role in aiding and abetting the commission of the crime. Counsel did, however, assert that there was no evidence whatsoever that a gun was produced in Petitioner's presence.

At the end of the state's evidence, Petitioner's trial counsel moved for a judgment of acquittal on the charge of Robbery in the First Degree, again arguing that Petitioner "did not have any knowledge that [his co-defendant] was armed with a gun." Resp. Exh. 117, pp. 98-99. The trial judge denied the motion, holding that "I do not believe based on [*State v. Anlauf*, 164 Or. App. 672, 995 P.2d 547 (2000)] that the state needs to prove that the defendant knew that a weapon was going to be used but he had known [sic] that a robbery was going on.'" Resp. Exh. 117, p. 111.

At the close of trial, the trial judge instructed the jury on the definition of "aiding and abetting." With regard to the two counts of Robbery in the First Degree, the judge instructed:

> Counts 1 and 2 charge Robbery in the First Degree with a Firearm. Oregon law provides that a person commits the crime of Robbery in the First Degree if, in the course of committing theft, the person threatens the immediate use of physical force upon another with the intent to prevent resistance to the taking of the property, and the person is armed with a deadly weapon.
>
> In order to establish this charge, the state must prove beyond a reasonable doubt each of the following material elements: First, that the act was committed in Multnomah County, Oregon;
>
> Two, the act occurred on or about June 13, 2001;
>
> Third, that [two of Petitioner's co-defendants] committed theft;

---

[1]Under *State v. Anlauf*, a defendant cannot be convicted as an aider and abettor if, during the course of a criminal episode, an accomplice commits an entirely separate crime and there is no evidence to prove that the aider and abettor assisted the principal in that crime.

13 - FINDINGS AND RECOMMENDATION -

        Four, that [two of Petitioner's co-defendants] in the course of committing theft threatened the immediate use of physical force upon a person by the name of Jill Marie Stamper;

        Five, that [two of Petitioner's co-defendants] acted with the intent in preventing resistance to the taking of the property;

        Six, that [two of Petitioner's co-defendants] were armed with a deadly weapon;

        Seven, that [Petitioner] aided and abetted the commission of that crime.

Resp. Exh. 118, pp. 9-10.

        According to Petitioner, trial counsel should have objected on the basis that this instruction was in error, because it should have stated that the jury must find the Petitioner *knew* that his co-defendant would use a weapon in order to find Petitioner guilty under an aiding and abetting theory. Under Oregon law, however, the jury only needed to conclude that Petitioner intended to aid and abet the robbery, not that Petitioner was aware that his co-defendant was planning to use a weapon. *See State v. Jackson*, 64 Or. App. 667, 669 P.2d 826 (1983) (trial court properly denied motion for judgment of acquittal where defendant drove getaway car and was caught with proceeds of robbery, even though he and co-defendant both denied defendant was involved or knew the robbery was going to take place); *State v. Hightower*, 17 Or. App. 112, 115-16, 521 P.2d 38 (1974) (defendant who intends theft but who shares in proceeds of burglary is liable for first degree burglary, even though defendant did not condone co-defendant's use of force against proprietor); *State v. Stark*, 7 Or. App. 145, 490 P.2d 511 (1971) ("the least degree of concert or collusion" is sufficient to convict a defendant as an accomplice).

14 - FINDINGS AND RECOMMENDATION -

Petitioner could not have been prejudiced by trial counsel's failure to object to the trial court's jury instruction on aider and abettor liability for Robbery in the First Degree. The instruction given by the trial judge was a correct statement of Oregon law. Accordingly, Petitioner cannot prevail in this habeas corpus action on his claim that trial counsel provided ineffective assistance of counsel.

## RECOMMENDATION

For these reasons, the Petition for Writ of Habeas Corpus should be DENIED and judgment of DISMISSAL should be entered.

A certificate of appealability should be DENIED as Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due March 28, 2012. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 14 days after the objections are filed. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 13th day of March, 2012.

John V. Acosta
United States Magistrate Judge